THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

   *Plaintiff,*

SOFÍA M. FIGUEROA ROSSY,              CIV. NO. 10-2157 (PG)

   *Intervenor Plaintiff*,

    v.

POLICÍA DE PUERTO RICO,

   *Defendant.*

### OPINION AND ORDER

Intervenor Plaintiff Sofía Figueroa Rossy (hereinafter "Figueroa") aspires to intervene in this employment discrimination action brought by the United States Attorney General (hereinafter "the Government") under Title VII of the Civil Rights Act of 1964. The Government's complaint is predicated on a charge of retaliation filed by Figueroa before the Equal Employment Opportunity Commission ("EEOC") against her employer, Defendant Policía de Puerto Rico (hereinafter "PRPD" or "Defendant"). See Docket No. 3. Figueroa now seeks to intervene in this action with an intervenor complaint that contains the same claims already advanced by the Government on her behalf plus additional claims. The Court has already allowed her to intervene with the former claims, but has ordered the parties to express themselves as to the additional claims. See Docket No. 33. The PRPD opposes her request to intervene as to the additional claims, while the Government takes no stance on the matter. After careful review of the procedural posture of this case and the pertinent law, the Court concludes that Figueroa's motion to intervene (Docket No. 31) should be **DENIED** as to the additional claims.

### I. BACKGROUND

On December 1, 2010 the United States filed the instant action against the PRPD seeking to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. (Title VII). (Docket No. 3). The Government's complaint is based on the alleged acts of retaliation suffered by Figueroa, a PRPD agent who was assigned

to the Caguas Sex Crimes Division of the Criminal Investigations Corps. Figueroa apparently complained numerous times to different PRPD officials about the sexual harassment she claims she was subjected to, but these officials failed to take any meaningful action aimed at remedying her situation. Instead, the officials failed to keep Figueroa's grievances confidential, involuntarily transferred her away from her post, and retaliated against her for her complaints, all in violation of several PRPD regulations. The Government maintains that these actions also violated Figueroa's rights under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), and pray this Court grant Figueroa equitable relief by enjoining the PRPD from failing or refusing to: (1) provide sufficient remedial relief meant to address Figueroa's damages; (2) take other appropriate nondiscriminatory measures to overcome the retaliation suffered by Figueroa; (3) award compensatory damages to Figueroa; and (4) supplement its mandatory training for all supervisors in the Caguas District regarding the procedures to follow in investigating claims of retaliation under Title VII. Defendant answered the complaint on March 10, 2011 and basically denied most of the Government's allegations.

On December 27, 2010 Figueroa opened a separate case and filed her own complaint against Defendant PRPD and the Commonwealth of Puerto Rico, as well as several supervisory officers of the PRPD, whom she claims are liable for the discriminatory acts suffered by her. (Case No. 10-2270 (DRD), Docket No. 1). There, Figueroa advanced civil rights claims under 42 U.S.C. §§ 1983, 1985 and 1988, claims under Title VII (to wit: sexual harassment, hostile work environment and retaliation), as well as supplemental law claims under assorted Puerto Rico statutes. The complaint filed by the Government in this case only contains claims based on retaliation under Title VII. On May 27, 2011 Figueroa filed a "Motion to Consolidate" her case with the instant case. (Docket No. 24). In support of her request, Figueroa stated that both cases "involve the same facts involving sexual harassment, hostile work environment and retaliation." Id. at ¶4. This Court denied the motion on June 1, 2011. (Docket No. 25).

A couple of months later, on August 18, 2011 the parties to the instant case filed a joint motion seeking a stay of discovery in order to pursue settlement negotiations. The parties stated that "given the

extensive discovery intended to be performed by the parties, at the present time the undersigned attorneys understand that it is in the best interest of our clients to consider settling this case at this juncture without incurring the costs inherent in the discovery process." (Docket No. 27, ¶2). The Court granted a forty five (45) day stay and ordered the parties to resume discovery on October 3, 2011. On September 26, 2011 the parties filed another joint motion informing the Court that Defendant had been unable reach a settlement agreement with Figueroa concerning her related civil case. They requested the Court schedule a settlement conference to assist them with said endeavor. (Docket No. 29). The Court held the conference and the parties informed they had reached an agreement "in principle" but nevertheless required additional time to discuss parts of the consent decree with PRPD officials. (Dockets No. 32 and 42, ¶4).

On October 24, 2011 Figueroa filed a motion to intervene in the instant case under FED. R. CIV. P. 24(a) along with an appended intervenor complaint. (Docket No. 31). The intervenor complaint is the same as the complaint she filed in the related civil case. Although it contained mostly the same factual averments as the Government's complaint, the intervenor complaint also contained additional factual averments describing events which took place after the ones recounted in the Government's complaint. The Court granted the motion to intervene but only as to the claims already presented by the Government on Figueroa's behalf, namely the retaliation claims under Title VII. (Docket No. 33). The Court directed the parties to express themselves as to the additional claims contained in the intervenor complaint.

While the Government took no position as to the motion to intervene, Defendant demurred, arguing that although Figueroa had a right to intervene under FED. R. CIV. P. 24(a) "as of right," said intervention should be denied as untimely. In the alternative, should the Court allow Figueroa to intervene with the claims already being pursued by the Government on her behalf, the PRPD argues the Court should deny the intervention as to the additional claims. It contends that since these claims were not presented in the original complaint filed by the Government, Figueroa only has a "permissive" right to bring them into this case under FED. R. CIV. P. 24(b). The PRPD further maintains that

Figueroa's intervention does not comply with the requirements of Rule 24(b) as it is untimely and would unduly delay and prejudice the adjudication of the original parties' rights in this case.[1] Because the Court has already ruled that Figueroa may intervene in this case only as to the claims already brought by the Government on her behalf, the only remaining issue is whether Figueroa's additional claims should be allowed to proceed in this case under either Rule 24(a) or (b). The Court, in its discretion, concludes that they should not.

## II. DISCUSSION

The Court will first discuss whether Figueroa's additional claims may proceed in this case under the standard set out in Rule 24(a) for interventions as "of right." Barring that, the Court will discuss whether the claims may still be able to proceed under the rubric of Rule 24(b) for "permissive" interventions.

### A. Rule 24(a) – Interventions As "Of Right"

In her motion to intervene, Figueroa posits that she enjoys an unconditional right to intervene in this case under Rule 24(a) with her additional claims. Said Rule states that "on timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute." (our emphasis). Section 706 of Title VII confers such an unconditional right as it provides that "the person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General." See 42 U.S.C. § 2000e-5(f)(1). However, said statute does not confer an unconditional right to assert claims in addition to those already presented by the Government. See EEOC v. The West Co., 1986 WL 1239, at *3 (E.D.Pa. 1986); and also Equal Employment Opportunity Commission v. Rekrem, Inc., 199 F.R.D. 526 (S.D.N.Y. 2001)(Evaluating whether to allow Title VII intervenor plaintiffs' additional claims under the rubric of Rule 24(b) for permissive interventions, and not under the standard of Rule 24(a) for interventions as of right). Therefore, despite Figueroa's plain

---

[1] Defendant also argues that even if the additional claims were to be admitted, the same should be dismissed because Figueroa failed to exhaust administrative remedies, the claims are time barred and they also fail to comply with the applicable pleading requirements. The Court sees no reason to address these arguments in depth as it ultimately concludes that Figueroa's intervention as to the additional claims should not proceed.

assertion to the contrary, the Court finds that Title VII does not provide her with an "unconditional right" to intervene in this case with claims outside those contained in the Government's complaint.

Nevertheless, Figueroa may still be able to intervene "as of right" with her additional claims if she satisfies the requirements of Rule 24(a)(2). To do so, Figueroa must establish: (i) the timeliness of her request to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede her ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party. FED. R. CIV. P. 24(a)(2); R&G Mortg. Corp. v. Fed Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009); Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011). "The failure to establish any one of them dooms intervention." R&G Mortg. Corp., 584 F.3d at 7.

At the outset, the Court must note that Figueroa has neglected to make any showing meant to satisfy the above requirements, either via her motion to intervene or her motion in compliance with the Court's order. As such, the Court is forced to agree with Defendant's assertion that Figueroa cannot demonstrate "the lack of adequate representation of [her] position by any existing party." In this case, it is obvious that she is able to adequately represent her own interests in this action as she has already been granted a partial leave to intervene. As such, Figueroa has failed to establish that she is entitled to intervene with her additional claims "as of right" under Rule 24(a).

Having so determined, the Court must now ascertain whether the additional claims may proceed under the standard set out in Rule 24(b) for permissive interventions.

**B. Rule 24(b) – Permissive Interventions**

Rule 24(b)(1) provides that on a "timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." (our emphasis). The Court, in exercising its discretion, must consider whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3). In this case, Defendant does

not dispute that some of Figueroa's claims share common questions of law and fact with those present in the Government's complaint. Instead, the PRPD argues that Figueroa's request to intervene is not timely, as required by both Rules 24(a) and (b), and that the circumstances of this case as a whole militate in favor of denying intervention. Figueroa, on her part, makes few if any arguments opposing Defendant's contentions. Regardless, the Court will analyze whether Figueroa's additional claims may proceed under Rule 24(b).

"The timeliness requirement is of first importance, and the trial court's determination of timeliness is case-specific and entitled to substantial deference." United States v. Municipio de Vega Alta, 244 F.R.D. 118 (D.P.R. 2007). The court's exercise of judicial discretion in this regard will not be disturbed unless there is an abuse of such discretion. NAACP v. New York, 413 U.S. 345 (1973). According to the First Circuit, a court must weigh four factors in deciding whether an intervention is timely: (i) the length of time that the putative intervenor knew or reasonably should have known that her interests were at risk before she moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating either for or against intervention. R&G Mortg. Corp., 584 F.3d at 7. The Court may be more strict in assessing the issue of timeliness under a Rule 24(b) motion than under a Rule 24(a) motion. Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1230 n. 2 (1st Cir. 1992). Moreover, the timeliness inquiry is "inherently fact-sensitive and depends on the totality of the circumstances." R&G Mortg. Corp., 584 F.3d at 7.

    i. *Knowledge*

The Court will begin with the first factor dealing with the intervenor's knowledge of the instant suit and the threat it may pose to her interests. The burden on demonstrating lack of knowledge is on the party seeking intervention. Equal Employment Opportunity Commission v. Westinghouse Electric Corporation, 675 F.2d 164, 165 (8th Cir. 1982). In this case, the Government filed its complaint on December 1, 2010. It wasn't until almost six months after, on May 27, 2011, that Figueroa decided to request consolidation of her case with this one. By doing so,

Figueroa admits she "unintendedly overlooked" the requirements of Section 706 of Title VII, presumably because the correct course of action would have been to file a motion to intervene. (Docket No. 31, ¶4). Figueroa failed to provide the Court with any explanation meant to excuse the sixth month delay.

Shortly thereafter, the Court denied the motion to consolidate, and Figueroa proceeded to wait almost another five months before filing her motion to intervene in the instant case. Again, Figueroa provided no reasons for such a long delay. In total, she waited almost eleven months after the Government filed its complaint to seek intervention. This delay is puzzling to the Court, particularly because Figueroa has not alleged that she was oblivious to the complaint filed by the Government on her behalf. In fact, the motion to dismiss filed by the defendants in the related civil case clearly mentioned the action filed by Government in its third paragraph. (Case No. 10-2270 (DRD), Docket No. 28). And yet Figueroa inexplicably waited over five months after that motion was filed to intervene in this case. As such, the Court finds that the knowledge factor strongly weighs against allowing such a late intervention.

    ii. *Prejudice to existing parties*

This Court finds that granting the motion to intervene as to the additional claims will prove extremely prejudicial to the existing parties in this case, including Figueroa. After the Court entered its "Case Management Memorandum Order" for this case on June 3, 2011, the parties entered into settlement negotiations. On August 18, 2011 they jointly requested a stay of discovery in order to advance the settlement discussions without having to incur in considerable discovery expenses. On October 18, 2011 the Court celebrated a settlement conference with the parties, where they acknowledged having reached a settlement agreement "in principle," but Defendant's counsel requested additional time to discuss various provisions of the consent decree with PRPD officials. (Docket No. 42, ¶4). Therefore, it is quite evident that the parties are very close to reaching an agreement that would dispose of this case, and infusing additional claims at this stage would undoubtedly scrap that agreement.

The intervenor complaint contains extensive factual allegations covering acts of sexual harassment, hostile work environment and

retaliation suffered by Figueroa since early 2006 all the way through August 27, 2010. Said complaint spans thirty (30) pages and contains claims under Section 1983, 1985, and 1988, as well as claims under various Puerto Rico employment discrimination statutes. In contrast, the complaint submitted by the Government is seven (7) pages long and manifests concise factual allegations that adequately support Figueroa's claim of retaliation under Title VII.[2] Allowing the additional claims to proceed would prove extremely time consuming and would enmesh the existing parties in extensive discovery proceedings, something they have already said they would like to avoid. Thus, the Court finds that allowing the additional claims will substantially complicate the proceedings and harm the existing parties. See EEOC v. Dan Lepore & Sons Co., 2004 WL 240315 at *3 (E.D.Pa. 2004)(denying motion to intervene as to an additional claim not brought by the EEOC because it would "unduly complicate the proceedings and shift the focus [of] the litigation from the EEOC's Title VII claims.").

    iii. *Prejudice to Figueroa*

Denying the motion to intervene as to the additional claims will not harm Figueroa; on the contrary, it will expedite the relief needed to enjoin Defendant from continuing its retaliatory campaign against her. Moreover, Figueroa has not made any allegation expressing any belief that the relief sought by the Government in this case is insufficient to make her whole for the wrongs she suffered. As to her additional claims under Title VII, namely her sexual harassment and hostile work environment claims, it is unlikely this Court would be with jurisdiction to entertain them, as it appears that Figueroa has not exhausted her administrative remedies. The charges filed by Figueroa before the EEOC on November 3, 2008; August 10, 2008; September 16, 2010; and March 30, 2011 all contain a checkmark under retaliation, but none under discrimination based on sex. Thus, it appears that Figueroa's Title VII claims of sexual harassment and hostile work environment have not been under the scrutiny of the EEOC; as such, allowing Figueroa to intervene with them would probably prove futile. See Morales-Vallellanes v. Potter, 339 F.3d 9, 18

---

[2] The Court makes no determination as to whether the claims set forth by the Government on Figueroa's behalf are enough to survive the recent "Motion for Judgment on the Pleadings" filed the PRPD on June 6, 2012. See Docket No. 43.

(1st Cir. 2003)(holding that a Title VII cause of action is limited to those discrimination allegations in the complaint that have been under the scrutiny of a formal EEOC complaint); and <u>United States v. Glens Falls Newspapers, Inc.</u>, 160 F.3d 853, 856 (2nd Cir. 2008)(agreeing with district court's denial of motion to intervene on futility grounds).

Therefore, in view of the fact that Figueroa has already been allowed to intervene in this case with her Title VII claim of retaliation, the Court sees little or no prejudice to her in disallowing the additional claims.

iv. *Special Circumstances*

Other than the circumstances already recounted, at this time the Court is unable to identify any special circumstances which would militate either for or against allowing the additional claims.

Therefore, it is apparent that the factors outlined above suggest that Figueroa's request to intervene is not timeous, and thus the additional claims should not be allowed to proceed under Rule 24(b).

### III. CONCLUSION

After having carefully analyzed the parties' arguments in this case, the Court concludes that Figueroa's motion to intervene (Docket No. 31) should be **DENIED** as to the additional claims. Figueroa's pending motion in compliance (Docket No. 39) is therefore **NOTED** and **DENIED.**

**IT IS SO ORDERED**

In San Juan, Puerto Rico, June 13, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**